IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Fortis Corporate Insurance, S.A.                          3:04CV7048

    Plaintiff,

v.                                                                          ORDER

Viken Ship Management A.S., et al,

    Defendants.

This is a suit by an insurance company, Fortis Corporate Insurance, S.A. ("Fortis"), to recover for damages to a shipment of steel coils damaged while being shipped from Poland to Toledo, Ohio. Fortis brought suit against the following entities involved in the shipment: Viken Ship Management A.S. ("VSM"), and Viken Lakers A.S. ("Viken Lakers").

Defendants move for summary judgment, claiming that the action by Fortis is time-barred under the Carriage of Goods by Sea Act ("COGSA"). Plaintiff, however, argues that COGSA does not govern the parties and their dispute. The sole question to be decided is whether a genuine issue of material fact exists as to whether COGSA's one-year statute of limitations applies to the current dispute between the parties.

**Background**

On January 1, 1997, the entities that are now known as Viken Lakers and VSM entered into a ship management agreement. Under the agreement, VSM was to provide a Master, officers and crew, perform technical management, perform accounting and supply provisions for Viken Lakers,

the owner of a commercial vessel, the "M/V Inviken." Among other stipulations, the contract provides that Viken Lakers would indemnify VSM against any losses arising out of performance. The agreement contains a "Himalaya" clause, which protects employees and agents of VSM from liability to Viken Lakers.

On August 28, 1997, the company now known as Viken Lakers signed a Time Charter agreement with FedNav. Under that agreement, FedNav (the "Charterer" with respect to this agreement), in effect, rented the M/V Inviken from Viken Lakers. Viken Lakers agreed to pay for insurance for the vessel, various wages for the crew, charges related to the crew, and in general to maintain the ship. FedNav agreed to pay for fuel, consular charges, and all "other usual expenses." Viken Lakers was to appoint the Captain, who would be "under the orders and directions of the Charterers as regards employment and agency." The agreement further states that

> Charterers are to perform all cargo handling at their expense under the supervision of the Captain at Owner's risk as [to] trim and stability [of] vessel, who is to sign the bills of lading for cargo as presented in conformity with mate's and tally clerk's receipts. All bills of lading shall be without prejudice to this Charter and the Charterers shall indemnify the Owners against all consequences or liabilities which may arise from any inconsistency between this Charter and any bills of lading or waybills signed by the Charterers or their agents.

On September 23, 2002, Viken Lakers and VSM together entered an agreement with Columbia Ship Management, Ltd. ("Columbia"), whereby Columbia would provide a crew for the M/V Inviken. The contract does not provide any indemnification clause in favor of Columbia, but it specifies that it shall be governed by British law.

On September 27, 2002, Metallia USA ("Metallia") signed a voyage charter party (the "Charter Party") with FedNav International Limited ("FedNav") for delivery of the steel coils to

2

Toledo. As both charterer and shipper, Metallia intended to use the vessel for this particular voyage to Ohio.

The Charter Party contained the following relevant provisions:

Bills of Lading [are] to be marked 'Freight Payable as per Charter Party' and subject to all terms, conditions and exceptions as per C/P dates September 27th, 2002, including Arbitration Clause.

U.S.A. Clause Paramount applies to this Charter and Bills of Lading under it.

The Pilot, Master, Officers and Crew of the vessel . . . shall not be agents or employees of Charterers and the Charterers shall not be liable for any loss, damage or claims resulting from or arising out of negligence or error of any of them while vessel is proceeding to or lying at any place of loading and/or discharging.

The Charter Party did not contain a Himalaya clause.

In mid-October, 2002, the steel coils were placed, pursuant to the Charter Party between Metallia and FedNav, on the M/V Inviken at a the port of Szczecin, Poland. At that time, a "bill of lading" was signed by CST Comet Shipping & Trading Ltd. ("CST") "for and on behalf of the master captain." Metallia or its agents remained in possession of bill of lading; at no time prior to the ship's arrival in Toledo did Metallia transfer the bill to a third party.

After the shipment arrived in a damaged condition in Toledo, Fortis paid its owner $375,000. It seeks to recover for the loss from the defendants.

## Discussion

Against the present defendants, VSM and Viken Lakers, Fortis asserted that: 1) both VSM and Viken Lakers were negligent in the performance of their duties; 2) both VSM and Viken Lakers breached bailment obligations/warranty of seaworthiness, the breach of such bailment obligations resulting in a maritime lien; 3) VSM breached its duties to Metallia, which was a third-party

3

beneficiary of the contract between VSM and Viken Lakers; 4) VSM and Viken Lakers are joint venturers, and that each is responsible for the damages incurred during the shipment.

VSM and Viken Lakers contend that Fortis's action is barred under COGSA's one-year limitations period. Under the present motion, there is one primary issue to decide: whether COGSA applies to the prior relationship between Metallia and defendants such that Fortis is prevented from bringing this suit. Fortis does not contest that, should COGSA apply to the relationship between defendants and Metallia, this suit would be barred by the one-year statute of limitations that applies to claims under that statute.

## 1. Background on Carriage of Goods by Sea Act (COGSA)

Under COGSA, adopted by the United States in 1936, a "carrier" is subject to certain "responsibilities and liabilities." 46 U.S.C. § 30701 note. The statute also entitles a carrier to certain "rights and immunities," such as a one-year statute of limitations for "loss or damage." § 30701 note. According to the statute, "[t]he term 'carrier' *includes* the owner or the charterer who enters into a contract of carriage with a shipper." § 30701 note (emphasis supplied).

COGSA was enacted "to guard against perceived abuses by public carriers who exempted themselves from a high standard of liability using elaborately claused bills of lading." *Associated Metals & Minerals Corp. v. S/S Jasmine*, 983 F.2d 410, 412 (2d Cir. 1993). It therefore applies by force of law to "[e]very bill of lading or similar document of title which is evidence of a contract of carriage of goods by sea to or from ports of the United Sates, in foreign trade." 46 U.S.C. § 30701 note. The statute does not apply, however, to charter parties (which are "roughly synonymous with private carriage") because COGSA drafters "considered parties to a charter as holding equivalent bargaining power." *Associated Metals*, 983 F.2d at 412; 46 U.S.C. § 30701 note ("The provisions

4

of this chapter shall not be applicable to charter parties; but if bills of lading are issued in the case of a ship under a charter party, they shall comply with the terms of this chapter.").

## 2. Determining the Identity of Carriers Under COGSA

### A. Charterers, Shippers and Other Entities

While traditional interpretations of COGSA restricted "carrier" status to owners and charterers, some courts have found that the COGSA definition of "carrier" is open-ended and non-exhaustive. *See*, *e.g.*, *Duferco Steel v. M/V Festivity*, 1998 WL 474197, at *1 (S.D.N.Y.); *see also* 46 U.S.C. § 30701 note ("[t]he term 'carrier' *includes* the owner or the charterer . . .") (emphasis supplied). Under this expansive approach, vessel managers (in addition to other types of entities involved in the carriage of goods), though not specifically designated in COGSA, could retain carrier status.

This "practical approach" to this treaty-based statute would help to resolve many of the problems arising from applying an eighty year-old statute to contemporary practices in the shipping industry. *See, e.g.*, Daniel H. Charest, Note, *A Fresh Look at the Treatment of Vessel Managers Under COGSA*, 78 *Tul. L. Rev.* 885, 886-87 (2004) (citing *Multimodal Transport: The Feasibility of an International Legal Instrument: Report of the UNCTAD Secretariat*, U.N. Conference on Trade and Development, at 11, U.N. Doc. UNCTAD/SDTE/TLB/2003/1 (2003), available at http://www.unctad.org/en/docs/sdtetlb20031_en.pdf (last visited Feb. 7, 2007); *see also Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 25 (2004) (noting the transformation of maritime commerce).

Despite these efforts to conform COGSA to current practices, the statute's text and the great weight of the case law interpreting and applying it preclude an expansive definition of the term

5

"carrier."[1] *See*, *e.g.*, *Thyssen Steel Co. v. M/V Kavo Yerakas*, 50 F.3d 1349, 1353 (5th Cir. 1995) (requiring contractual privity in order to be a carrier); *Pac. Employers Ins. Co. V. M/V Gloria*, 767 F.2d 229, 236 (5th Cir. 1985); *see also* Mary T. Reilly, *Identity of the Carrier: Issues Under Slot Charters*, 25 Tul. Mar. L.J. 505, 509 (2001) (discussing how U.S. courts have declined to deem vessel managers as COGSA carriers).

Fortis argues that COGSA, by its plain text, applies only to "carriers," who are defined as "owners" or "charterers" who enter into a contract of carriage with the shipper (i.e. Metallia), and that VSM is neither owner nor charterer. Fortis also argues that the only contract of carriage was between Metallia and FedNav, so only Metallia's relationship with FedNav (but not any relationship with VSM or Viken Lakers) was governed by COGSA.

VSM and Viken Lakers agree that COGSA only applies to "carriers." All parties also agree that Metallia was both the "charterer" and "shipper," that Viken Lakers was the "owner," and that VSM was neither a "charterer" nor an "owner." Defendants argue, however, that COGSA's definition of "carrier," which includes "owners" and "charterers" who "enter into a contract of carriage with a shipper" is nonexclusive, and that VSM may be a "carrier" without necessarily being an "owner" or "charterer." Furthermore, defendants argue that, even though they were not technically parties to the Charter Party, they entered into a contractual relationship with Metallia via a bill of lading.

---

[1] The Sixth Circuit has not ruled directly on this aspect of the definition of "carrier" under COGSA. *See, e.g., Acwoo Intern. Steel Corp. v. Toko Kaiun Kaish, Ltd.*, 840 F.2d 1284, 1289-90 (6th Cir. 1988) (declaring that the term does not include stevedores or warehousemen) (citing *Robert C. Herd & Co. v. Krawill Machinery Corp.*, 359 U.S. 297, 301-02 (1959)). Nor has the Supreme Court ruled on this issue. *But see Kirby*, 543 U.S. 14, 27 (2004) (holding that the reach of admiralty jurisdiction extends to inland travel in some instances).

Viken Lakers was the owner of the vessel, so at the very least it meets the requirements of the first prong of the COGSA carrier definition. The "contract of carriage" prong of the analysis is discussed *infra*.

Since VSM was neither an "owner" nor a "charterer," but was instead a vessel manager, it cannot be considered a COGSA carrier. *Steel Coils, Inc. v. M/V Lake Marion*, 331 F.3d 422, 436-38 (5th Cir. 2003) (holding that vessel manager, as an agent of vessel owner, could not be considered a COGSA carrier) (citing *Herd*, 359 U.S. at 298-301)). For this and other reasons discussed *infra*, defendants' motion for summary judgment will be denied as to VSM.

### B. The Contract of Carriage

To be a "carrier" under COGSA, an owner or charterer must "enter[] into a contract of carriage with a shipper." 46 U.S.C. § 30701 note. The contract of carriage can be evidenced by a bill of lading, a document with multiple potential uses in the shipping industry. Typically, the bill of lading is signed when goods are placed on a vessel (describing, for instance, the quantity and condition of those goods), and the bill of lading can therefore constitute a receipt or possibly title to goods on board. Also, the bill of lading can constitute evidence of a contract of carriage with the shipper. A contract of carriage may be evidenced not only by bills of lading, but also by a charter party agreement.

In private carriage, the charter party agreement typically acts as the contract of carriage for the parties to the charter party, and a bill of lading usually acts as a receipt between them. *See, e.g., Ministry of Commerce, State Purchases Directorate of Athens, Greece v. Marine Tankers Corp.*, 194 F. Supp. 161, 162-63 (S.D.N.Y. 1960). The charter party is typically negotiated and signed between the parties first. Then, after the goods are loaded onto the vessel, a bill of lading is issued by one of

7

the parties or its agents. Since the two parties have already negotiated the terms of their relationship through the charter party, and since only one party creates and signs the bill of lading, courts have found that the bill of lading acts as a receipt for the goods between the parties, rather than as a superceding contract or an amendment to the charter party. *See*, *e.g.*, *Continental Ins. Co. v. M/V Ocean Jade*, 269 F. Supp. 2d 348, 354 (S.D.N.Y. 2003).

One exception to this general rule is when the bill of lading is negotiated to a third party ("consignee"). Since the consignee is not subject to the terms of the charter party,[2] the bill of lading is transformed into the applicable contract of carriage. *See, e.g., Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817 (2d Cir. 2006); *see also Robert Force, Admiralty and Maritime Law* 60 (2004).

One question in this case is whether the bill of lading constitutes a mere receipt or whether it evidences a contract of carriage between defendants and Metallia. Although Fortis concedes that a bill of lading can sometimes bind the parties contractually, it argues that, in this case, the bill of lading is a mere receipt, because it was not negotiated to a third party. Since this was a private carriage, since Metallia was both the shipper and charterer, and since the bill of lading stayed in its possession at all times and thus was never negotiated, Fortis claims that the bill of lading does not evidence a contract.

Fortis places much emphasis on *Asoma*, which purportedly backs its argument that, when a owner of goods who is also a charterer signs a charter party with a time charterer, bills of lading issued subsequent to the charter party act as mere receipts. 467 F.3d at 819-21. In that case, SK Shipping (the time charterer), in effect, rented the use of a vessel to Asoma through a charter party

---

[2] That is, the consignee is not subject to the terms of the charter party, unless those terms have been successfully incorporated through appropriate language in the bill of lading. *Great Am. Ins. Co. v. M/V Handy Laker*, No. 96 Civ. 8737, 97 Civ. 7400, 2002 WL 32191640, at *14 (S.D.N.Y. 2002).

agreement. SK Shipping later issued bills of lading which were eventually assigned to the charterer, Asoma. *Id*. Those bills of lading contained different stipulations than the charter party, and the question arose whether they trumped the earlier charter party signed between the two parties. *Id*. at 821-22.

The court held that the charter party prevailed over the bills of lading, which it held were mere receipts which had not been negotiated to a third party other than Asoma. *Id*. at 823-24. The court's logic was that SK Shipping should not be able, through the unilateral action of issuing a bill of lading, to change the terms of its prior contract with Asoma. *Id*.

This situation does not exist here, however, because neither Viken Lakers nor VSM were parties to the Charter Party agreement; thus, allowing the bills of lading to have contractual force would not have the effect of enabling the defendants to alter unilaterally the previous contractual arrangement with Metallia.

In discussing hypothetical facts, the court remarked in *Asoma* that, "[t]o be sure, if the suit for cargo damage were brought against the carrier by an assignee of the bills of lading who was not a party or beneficiary to the contract of charter, the bills of lading would in all likelihood serve as pertinent contracts of carriage . . . ." *Id*. at 825. This alternate scenario does not, however, exist here: in this case the bill of lading was held by the charterer/shipper itself (i.e. Metallia), not by an "assignee."

The rationale for holding that bills of lading transform from mere receipts or documents of title into contracts when negotiated is that the assignee or transferee is a stranger to the charter party. "Where the bill of lading has been transferred for value to third persons who are strangers to the charter party, its terms become very important." *U.S. v. Wessel, Duval & Co.*, 115 F.Supp 678, 682

9

(S.D.N.Y. 1953). The bill of lading "then constitutes an undertaking on the part of the shipowner with the holders, which is independent of the charter party, except so far as that is expressly incorporated in it." *Id*.

The first question to be answered is whether the bill of lading, which followed the Charter Party, had the effect of altering or superceding that original agreement. The answer is clearly "no."

Both parties agree that, when a charter party is signed by two parties, and a subsequent bill of lading is not negotiated, the bill of lading does not alter the substance of the agreement between the parties (*i.e.* Metallia and FedNav). *See Kyoei Fire & Marine Ins. Co., Ltd. v. M/V/ Maritime Antalya*, Slip Opinion, 2006 WL 3378683, at * 2 (S.D.N.Y.).

The next question is whether Viken Lakers and/or VSM acquired contractual privity with Metallia by virtue of the bill of lading.

Viken Lakers and VSM argue that the master can bind a vessel owner to the contract of carriage when the master signs a bill of lading, even if the vessel owner did not sign the applicable charter party. The statute, for its part, does not necessarily rule out their argument:

> The term 'contract of carriage' applies only to contracts of carriage covered by a bill of lading or any similar document of title, insofar as such document relates to the carriage of goods by sea, including any bill of lading or any similar document as aforesaid issued under or pursuant to a charter party from the moment at which such bill of lading or similar document of title regulates the relations between a carrier and a holder of the same.

46 U.S.C. § 30701 note (emphasis supplied).

The statute makes clear that, although charter parties are not subject to COGSA (unless, of course, specifically invoked by the charter party), bills of lading, even if issued "under a charter party," may still be automatically subject to COGSA "from the moment at which such bill of lading . . . regulates the relations between" the parties. 46 U.S.C. § 30701 note.

It is indeed possible for a vessel owner to be liable under COGSA even when the vessel owner did not sign a charter party agreement with the owner of the goods being transported. *Thyssen*, 50 F.3d at 1354; *Cargill Ferrous Int'l v. M/V Sukarawan Naree*, 1997 WL 537992, at *5 (E.D.La.). Contractual privity can arise in such a situation, seemingly even without negotiation of the bill of lading. *Thyssen*, 50 F.3d at 1354 (expressing approval of the principle that contractual privity can exist when bill of lading was apparently not negotiated); *Cargill Ferrous*, 1997 WL 537992, at *5 (same). The bill of lading creates a contractual relationship between the cargo owner and the vessel owner if it is signed on behalf of the master.

For a contract to attach to a shipowner via a bill of lading signed on behalf of the master, the person signing the bill of lading must have "authority to sign on behalf of the master," and the master must have the "authority to bind [the shipowner]." *Pacific Employers Ins. Co., v. M/V Gloria*, 767 F.2d 229, 237 (5th Cir. 1985); *see also Nichimen Co. V. M.V. Farland*, 462 F.2d 319, 328-39 (2d Cir. 1972).

Fortis does not dispute the proposition that CST had the authority to sign on behalf of the master, but it does assert that the master lacked the authority to bind Viken Lakers. Fortis asserts that the master was an employee of Columbia, not Viken Lakers, and Viken Lakers thus could not be bound by the master's signature. Fortis cites only to *Steel Coils* to support this argument, however, that case did not address the master's authority to bind the vessel owner. 331 F.3d at 435-39. In fact, *Steel Coils* asserts that a vessel manager may still be an agent of a vessel owner, even if the vessel manager is not subject to COGSA like the owner. *Id*. Even if Columbia were the employer of the master, then the agreement between Viken Lakers and Columbia would grant the master, Columbia's employee, the ability to bind Viken Lakers.

11

Since the bill of lading, and not the Charter Party, "regulate[d] the relations between" Viken Lakers and Metallia, the bill of lading was subject to COGSA. 46 U.S.C. § 30701 note. In any event, the bill of lading adequately incorporated the terms of the Charter Party such that COGSA would apply. I conclude, accordingly, that summary judgment should be granted in favor of Viken Lakers in view of its ultimate status, derived from the effect of the bill of lading, as a carrier under COGSA.

Fortis also challenges whether CST's signature on behalf of the master could bind VSM. In response to the defendants' assertion that CST's signature "for and on behalf of the master captain" binds VSM, Fortis references two separate pieces of evidence.

First, Fortis notes that VSM is nowhere mentioned in the Time Charter Party applicable to Viken Lakers and FedNav.

Second, Fortis points out that there is no clause in the Charter Party authorizing issuance of a bill of lading on behalf of VSM.

Fortis has thus shown, at the very least, a genuine issue of material fact with regard to CST's ability to bind VSM. Moreover, the ability for the master to bind the shipowner, though well-documented, is not the same as the ability to bind a vessel manager.

In any event, VSM is neither a charterer nor an owner, and it is therefore precluded from being considered a carrier under COGSA. Since VSM is not a carrier, it was never subject to the added responsibilities, nor the added protections, of COGSA, and plaintiff's claims against it are not precluded by COGSA's one-year bar.

**Conclusion**

For the foregoing reasons, it is hereby

ORDERED THAT the defendants' motion for summary judgment be, and the same is hereby granted with respect to Viken Lakers, and denied with respect to VSM.

A scheduling conference is set for March 5, 2007 at 9:00 a.m.

So ordered.

s/James G. Carr  
James G. Carr  
Chief Judge